DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Monica Kurilich, appeals her conviction out of the Medina Municipal Court. This Court affirms.
 I. {¶ 2} Appellant was charged with one count of criminal damaging in violation of R.C. 2909.06(A)(1), a misdemeanor of the second degree. Appellant entered a plea of not guilty to the charge and the matter proceeded to trial. At the conclusion of trial, the jury found appellant guilty. The trial court sentenced appellant to 60 days in jail and suspended the entire 60 days. The trial court placed appellant on probation for 6 months, imposed a fine, and ordered appellant to pay restitution. Appellant timely appealed her *Page 2 
conviction, raising one assignment of error for review.1 The trial court granted a stay of execution of sentence in this matter pending appeal.
 II. ASSIGNMENT OF ERROR "APPELLANT'S CRIMINAL DAMAGING CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, WHERE THE STATE FAILED TO ESTABLISH THE ESSENTIAL ELEMENT OF IDENTITY OF THE PERPETRATOR."
 {¶ 3} Appellant argues that her conviction is against the manifest weight of the evidence. Specifically, appellant argues that the State failed to prove beyond a reasonable doubt the identity of the person who scratched the victim's car. This Court disagrees.
 "In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction. Id.
 This Court's review is hampered because the State has failed to file a *Page 3 
 {¶ 4} Appellant was convicted of criminal damaging in violation of R.C. 2909.06(A)(1), which states, "No person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent: [k]knowingly, by any means[.]" R.C.2901.01(A)(4) defines "physical harm to property" as "any tangible or intangible damage to property that, in any degree, results in loss to its value or interferes with its use or enjoyment." Such harm "does not include wear and tear occasioned by normal use." Id. R.C. 2901.22(B) states:
 "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 5} At trial, Jennifer Moody testified to the following. On December 10, 2005, she was working as the staff pharmacist at Drug Mart. She arrived between 8:30 and 8:45 a.m. and parked her black Volkswagon Jetta up against the building. Appellant was a pharmacy tech under her supervision and was scheduled to work the same day from 9:00 a.m. to 10:00 p.m.
 {¶ 6} Ms. Moody testified that appellant arrived at work just before 9:00 a.m. and argued about being assigned to bookkeeping for the entire 13-hour shift. Ms. Moody did not modify appellant's assignment for the day but she allowed appellant to take a break between 2:00 p.m. and 5:00 p.m. She testified that brief. Nevertheless, we address the appeal on its merits. *Page 4 
appellant was confrontational when Ms. Moody would not modify her assignment. She further testified that appellant remained unusually quiet during her shift.
 {¶ 7} Ms. Moody testified that she did not know where appellant parked her car that day. She further testified that she knows appellant to drive three different vehicles, a purple mini van, an Intrepid, and a Focus or Neon.
 {¶ 8} Ms. Moody testified that it was common practice for pharmacy workers to leave together with the pharmacist on duty after the store closed for safety and security reasons. She testified that cashiers, stock people and other workers up front walked out together with the store manager for the same reasons. On the evening of December 10, 2005, however, appellant was already gone when the pharmacy workers left at 10:15 p.m. Ms. Moody testified that she left with Stacey Swartz and Shawne. She testified that a man named Cliff approached them to talk. He had been waiting for Shawne to leave work. Ms. Moody testified that Stacey pointed out a scratch on the driver's side over the rear wheel. She testified that she looks at her car everyday and there was no scratch on the car when she arrived at work that day. She testified that the scratch was narrow but deep enough that there was no paint remaining, so the scratch could not be repaired by mere buffing.
 {¶ 9} Ms. Moody testified to certain hearsay statements without objection by appellant. Specifically, she testified that Cliff told her had seen a woman fitting appellant's description walk up to the Jetta as if to enter it, then walk back *Page 5 
around to the passenger side of the Jetta, enter a different vehicle and leave. She testified that she found that interesting because she had heard appellant talking a couple weeks earlier about slashing someone's tires if that person makes you mad. She added that she was also made aware of appellant's musing whether Moody would like a big scratch on her car.
 {¶ 10} Ms. Moody testified that a police officer was driving through the parking lot, patrolling the area. She testified that she waved him over and reported that her vehicle had been scratched.
 {¶ 11} Stacey Swartz testified that she was working as a pharmacy tech on December 10, 2005. She testified that appellant had called her to see if she would swap assignments for the day. She testified that, when she refused, appellant immediately got upset and angry with her.
 {¶ 12} Ms. Swartz testified regarding the policy that pharmacy workers leave the building after closing with the pharmacist for safety reasons. She testified that appellant did not leave with the pharmacy staff the evening of December 10, 2005, and that appellant was already gone when the pharmacy staff were ready to leave.
 {¶ 13} Ms. Swartz testified that she noticed a "pretty big" scratch on Ms. Moody's car after they exited Drug Mart. She testified that she had seen Moody's car on other occasions when she and Moody stood outside Drug Mart to talk, and there was no such scratch on the car prior to that day. *Page 6 
 {¶ 14} Ms. Swartz testified that Cliff Williams approached Ms. Moody, Shawne and her when they exited Drug Mart that evening after 10:15 p.m. She testified without objection by appellant that Cliff identified appellant by her physical appearance, rather than by name, as the person who was earlier by Ms. Moody's car. Ms. Swartz described appellant's physical appearance as follows: blond hair, an inch or two taller than Swartz and heavy set. The complaint described appellant as 5'3" and 265 pounds.
 {¶ 15} Clifford Williams testified at trial that he was very upset on December 10, 2005, because his aunt had died. He testified that he saw his friend Shawne's car in the Drug Mart parking lot that evening, and waited for her to exit the building after work. He testified that he had been in the Drug Mart parking lot on other occasions at closing time and he typically saw employees leaving as a group, not individually.
 {¶ 16} Mr. Williams testified that he saw a lone heavy set female exit the Drug Mart loading area and approach a black Jetta as if to enter it. He testified that the woman stayed at the rear of the Jetta for 5 to 10 seconds then "went back around and hopped into the mini van which was parked to the right." He testified that he did not see the woman touch the Jetta. He testified that the mini van was a dark color, although he could not identify the specific color. Mr. Williams testified that the woman never went to the passenger side of the mini van before entering the van's driver door and leaving. *Page 7 
 {¶ 17} Mr. Williams then identified appellant as the woman he saw approach the Jetta and leave in the mini van. He testified that, while he did not see the woman's face because she was wearing a hood, he identified the woman as appellant because he had been in Drug Mart many times and had met appellant once or twice. Secondly, he testified that it was after hours and the only people leaving Drug Mart at that time would be employees. He added that the Drug Mart lights had already been dimmed. Further, he testified that he identified appellant according to her body type.
 {¶ 18} Mr. Williams testified that Ms. Moody, Ms. Swartz and Shawne then exited the Drug Mart. He joined them near Ms. Moody's car, and Ms. Swartz noticed the scratch on the Jetta. He testified that a patrolling officer stopped and filled out a police report regarding the scratch.
 {¶ 19} Officer James Stevens of the Medina City Police Department testified that he has been a patrolman with various law enforcement agencies for 30 years. He testified that he has also been an insurance investigator and has experience investigating damage to vehicles.
 {¶ 20} Officer Stevens testified that he was on a routine patrol through the Drug Mart parking lot at approximately 10:15 to 10:30 p.m. on December 10, 2005, when he saw several people standing by a car in the parking lot. He testified that it was his habit to drive through business parking lots at closing time. *Page 8 
Although he did not know Drug Mart policy, he testified that he only ever saw employees leave Drug Mart at closing in groups.
 {¶ 21} Officer Stevens testified that he drove over and asked the group at the car if everything was okay. He testified that they told him that someone had vandalized one of the employee's cars. The officer testified that they then pointed out a scratch on the left quarter panel of a black Volkswagon.
 {¶ 22} Officer Stevens testified that he has experience both as a police officer and as an insurance investigator in evaluating such types of damage. He testified that, based on his experience, the scratch appeared to have been made by a sharp object, perhaps by a key. He further testified that there is always some sort of physical evidence left when a vehicle is damaged. Specifically, he testified that when a car is hit or scratched, there is a fine powder left along the edge of the damaged area for a short period of time. The officer testified that the powder residue would not remain if the damage occurred the day before or earlier. In this case, Officer Stevens testified that he observed such powder around the scratch on Ms. Moody's car. He testified, therefore, that the scratch was "fresh * * * done fresh. Very recent."
 {¶ 23} Officer Stevens testified that Cliff Williams gave him a description of a woman he had just seen by the black car. He testified that Ms. Moody, Ms. Swartz and Shawne all said that the description fit appellant. They then showed the officer where appellant lived, very near to Drug Mart. *Page 9 
 {¶ 24} Based on that information, Officer Stevens testified that he immediately went to appellant's house, where the only vehicle present was a dark mini van in appellant's driveway. He testified that he told appellant that a black car had been vandalized in the Drug Mart parking lot and there was an eyewitness. He testified that Cliff had identified appellant by her size, having met her once or twice in Drug Mart. The officer testified that appellant denied any involvement. Officer Stevens further testified that appellant denied having been anywhere near the black vehicle. Officer Stevens then took appellant to the police station for further questioning.
 {¶ 25} Officer Stevens testified that appellant changed her story at the police station. He testified that she admitted going between Ms. Moody's vehicle and her own to place something on her passenger seat and that she may have brushed against Ms. Moody's car. The officer testified that Mr. Williams was clear that appellant's vehicle was parked on the other side of Ms. Moody's car and that the woman he saw by the black Jetta walked to the Jetta's driver side then back around to a van parked on the other side of the car. He testified that appellant admitted that she knew that her boss drove a black car.
 {¶ 26} Officer Stevens testified that appellant asserted that she could not have possibly parked next to the passenger's side of Ms. Moody's car where Cliff reported seeing a dark van; because the Intrepid, the vehicle appellant claimed to have been driving that day, would not make right turns. He testified that appellant *Page 10 
did not explain how she could have parked on one side of Ms. Moody's car given her alleged vehicle's deficiency, but not the other.
 {¶ 27} Officer Stevens admitted that he did not lift any fingerprints from Ms. Moody's car or check appellant's keys for paint residue. The officer testified, however, that the scratch could have been made by any sharp object, not necessarily keys.
 {¶ 28} Roberta Dodson testified on behalf of appellant. She testified that she is a pharmacy technician and was working at the Medina Drug Mart on December 10, 2005. She testified that she parked to the right, i.e., passenger's side, of Ms. Moody's car when she arrived for her 9 a.m. to 5 p.m. shift. Ms. Dodson testified that she could not remember whether appellant had returned to work from her three-hour break when she left that spot at 5:00 p.m.
 {¶ 29} Appellant testified in her own defense. She testified that she has fibromyalgia and cannot stand in one spot for long periods of time. She testified, therefore, that she was upset that Ms. Moody changed her shift duties for December 10, 2005, so that she would have to stand for 13 hours in bookkeeping. Appellant testified that she was upset that Ms. Moody did not believe that her phone call the day before to discuss the schedule merited a response. She admitted that she became confrontational with Ms. Moody that morning at work. Appellant testified that before the incident she did not care for Ms. Moody and that she routinely referred to her as a "bitch." She further testified that she was *Page 11 
upset that Ms. Swartz would not swap duties with her for half a day, and that she knew that Ms. Swartz was lying when she said she had hurt her back, because appellant saw Ms. Swartz skip into work that day.
 {¶ 30} Appellant denied knowingly scratching Ms. Moody's car. She testified that she parked next to the driver's side of Ms. Moody's car both in the morning and when she returned after her break at 4:45 p.m. She testified that she could not have parked on the other side of Ms. Moody's car because Ms. Dodson's car was there and the Intrepid appellant claimed to have been driving could not make a right turn into that parking spot. She testified that there was sufficient room on the other side of Ms. Moody's car so that appellant could maneuver the right turn into that spot.
 {¶ 31} Appellant testified that she clocked out of work that evening at 10:13 p.m. and walked out of the store with the store manager, the front cashiers and some stock people. She named some of those employees by name. None of those people appeared to testify on appellant's behalf.
 {¶ 32} The State asked appellant why she thought that Ms. Moody, Ms. Swartz, Shawne and Mr. Williams would conspire to accuse appellant of scratching Ms. Moody's car if she had not done it. Appellant testified that she believed that the others were upset because appellant always refused to socialize with them after work. *Page 12 
 {¶ 33} Finally, appellant testified that she initially told Officer Stevens that she was not anywhere near Ms. Moody's car that evening because she was trying to relax and eat dinner when he arrived and she was confused for a moment.
 {¶ 34} Although there was some conflicting evidence in this case, this Court will not disturb the jury's factual determinations because the jury is in the best position to determine the credibility of the witnesses during trial. State v. Crowe, 9th Dist. No. 04CA0098-M,2005-Ohio-4082, at ¶ 22. In addition, this Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the jury chose to believe certain witness' testimony over the testimony of others. Id.
 {¶ 35} A thorough review of the record compels this Court to find no indication that the jury lost its way and committed a manifest miscarriage of justice in convicting appellant of criminal damaging. This is not the exceptional case where the evidence presented weighs heavily in favor of the defendant and against conviction. The evidence supports the jury's finding that appellant was identified as the perpetrator. Mr. Williams had met appellant; he identified a heavy set woman leaving the Drug Mart after closing when only employees would be leaving the store; he testified that she spent time at the rear of Ms. Moody's car then walked around and left in a dark mini van. The other witnesses all identified appellant by size as the perpetrator described by Mr. Williams. Officer Stevens investigated the incident and determined that the scratch had been made very *Page 13 
recently because powder residue remained at the site of the damage. Officer Stevens immediately arrived at appellant's home and found that a dark mini van was the only vehicle on the premises. Accordingly, this Court finds that appellant's conviction is not against the manifest weight of the evidence. Appellant's assignment of error is overruled.
 III. {¶ 36} Appellant's assignment of error is overruled. The judgment of the Medina Municipal Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this *Page 14 
judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
 Costs taxed to appellant. *Page 1